## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | | |
|---|---|---|
| **DEREK SCOTT** | ) | |
| | ) | **CASE NO.:** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AT&T MOBILITY SERVICES, LLC,** | ) | |
| **STEVE DRISCOLL, official and** | ) | |
| **individual capacity, STEVE MENARD,** | ) | |
| **official and individual capacity** | ) | |
| **DOUG CLARK, official and individual** | ) | |
| **Capacity, STACEY SWARTZ, official** | ) | |
| **And individual capacity,** | ) | |
| **AT&T Inc.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT  FOR VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

COMES NOW, Derek Scott, Plaintiff in the above styled action, by and through his attorney, Theresa Seals Starkes, Esq. and makes this Complaint against AT&T Mobility Services, LLC, Steve Driscoll, Steve Menard, Doug Clark, Stacey Swartz and AT&T, Inc., Defendants as follows:

## I.      NATURE OF THE ACTION

1.

This is an action for relief from employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended and Section 704(a) of Title VII of the Civil Rights Act of 1964.

2.

Plaintiff alleges that Defendants, AT&T Mobility Services, LLC, AT&T, Inc., Steve Driscoll, Steve Menard, Doug Clark and Stacey Swartz (collectively, "Defendants"), unlawfully discriminated against him on the basis of his race (African American) by subjecting him to different terms and conditions than non-African American employees.

3.

Plaintiff further alleges that Defendants harassed him on the basis of his race by removing his accounts, placing barriers on his ability to travel to clients and placing him on an unjustifiable performance improvement plan.

4.

Plaintiff further alleges that Defendants retaliated against him after he complained about discrimination against him and one of his solution

providers based on their race (African American) by removing his accounts, placing barriers on his ability to travel to clients, placing him on an unjustifiable performance improvement plan and attempting to close out his 2018 employee review which affected his compensation and bonuses.

## II.    THE PARTIES

5.

Plaintiff is an African American male.  He works as a second level Sales Executive 2 – Dealer Support.  Plaintiff's title is AT&T National FirstNet Channel Manager.  The Plaintiff is the only African American in this position.  The Plaintiff was initially hired in 2007 by AT&T.  He briefly left the company in November 2016 and was hired back on October 9, 2017 by AT&T Mobility Services, LLC.

6.

Upon information and belief, Defendant AT&T Mobility Services, LLC is a large wireless and voice carrier in the U.S.  It is the domestic wireless operation of AT&T Inc., its parent company.  AT&T Mobility Services employs approximately 43,000 individuals.  AT&T Mobility Services operates an office at 1025 Lenox Park Blvd. NE, Atlanta, Fulton County, GA 30319 employing approximately 1,500 employees at this

location and all or most of the events alleged herein occurred under the

direction of Steve Driscoll who is located in this office.

7.

At all times relevant herein, Defendant AT&T Mobility Services had

at least fifteen employees, and was therefore an "employer" within the

meaning of Title VII.

8.

Upon information and belief, Defendant AT&T Mobility Services is a

subsidiary of Defendant AT&T Inc.

9.

Upon information and belief, Defendant AT&T Inc. is a U.S.

company that maintains several office locations.  Defendant AT&T Inc. with

Defendant AT&T Mobility Services, operates the office at 1025 Lenox Park

Blvd., Atlanta, GA where all or most of the events alleged herein occurred

by Defendant Steve Driscoll located in this office.

10.

At all times relevant herein, Defendant AT&T Inc. had at least fifteen

employees and was therefore an "employer" within the meaning of Title VII.

11.

Upon information and belief, Defendant Steve Driscoll holds the title of Sales Manager – Dealer Support with AT&T Mobility Services.  Steve Driscoll works in the AT&T Mobility Services office located at 1025 Lenox Park Blvd., Atlanta, GA and is in some manner responsible for the occurrences and injuries alleged in this complaint.

12.

Upon information and belief, Defendant Steve Menard holds the title of Assistant Vice President with AT&T Mobility Services and was Steve Driscoll's supervisor.  Steve Menard is in some manner responsible for the occurrences and injuries alleged in this complaint.

13.

Upon information and belief, Doug Clark holds the title of Assistant Vice President in Application Sales with AT&T Mobility Services and is Steve Driscoll's direct supervisor.  Doug Clark is in some manner responsible for the occurrences and injuries alleged in this complaint.

14.

Upon information and belief, Stacey Swartz holds the title of Vice President in AT&T and is in some manner responsible for the occurrences and injuries alleged in this complaint.

## III.   JURISDICTION AND VENUE

### 15.

This Court has jurisdiction of Plaintiff's federal law claims pursuant to 28 U.S.C. §1331, as this case involves questions of federal law.

### 16.

This action is brought for discrimination in employment pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race).

### 17.

Venue is proper in, and Defendants are subject to the personal jurisdiction of this Court because Defendants maintain an office and business operations in this District and all or most of the events giving rise to this action occurred in this District, 28 U.S.C. §1391 (b); 42 U.S.C. §2000e-5(f)(3).

## IV.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

### 18.

Plaintiff timely filed charges of discrimination with United States Equal Employment Opportunity Commission ("EEOC") on or around February 11, 2020, the EEOC issued Plaintiff's Notice of Right to Sue. (Exhibit A).

19.

Plaintiff has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

## V.    FACTUAL ALLEGATIONS

20.

At all times material to this action, Plaintiff was employed by Defendants as an AT&T National FirstNet Channel Manager under the supervision of Steve Driscoll who is in the Atlanta, GA office.

21.

As part of his job, Plaintiff is responsible for supervising solution providers also known as partners assigned to him.

22.

On or about August 2018, Plaintiff was informed by Defendant Steve Driscoll that he was moving one solution provider/partner, EDN (the only African American solution provider/partner), from the Plaintiff's peer to him after only a month in the program.

23.

Defendant Steve Driscoll's explanation for moving the solution provider/partner, EDN, from the Plaintiff's peer to the Plaintiff was that he

thought the Plaintiff would be better suited to control EDN "because we were both black and could better relate to each other."

24.

Defendant Steve Driscoll also informed the Plaintiff that he should speak with Defendant Doug Clark about EDN and how to deal with them.

25.

On or about September 2018, Defendant Steve Driscoll began using different rules of engagement, tactics and requirements for the Plaintiff and EDN.

26.

On or about September 17, 2018, the Defendant Steve Driscoll and the Plaintiff had a conversation about fair business practices, AT&T's code of business conduct and racial discrimination.  The Plaintiff expressed his concerns with these topics and how the Defendant Steve Driscoll was treating him and the African American partner, EDN.

27.

Defendant Steve Driscoll began to yell at the Plaintiff for approximately 45 minutes threatening the Plaintiff's job and threatening to fire him because the Plaintiff asked about equality and fair/equal treatment for every partner regardless of race.

28.

Defendant Steve Driscoll yelled that he was removing the partner
EDN from the Plaintiff and that he was going to do what he could to fire the
Plaintiff.

29.

On or about September 18, 2018, Defendant Steve Driscoll reversed
his remarks and decision about removing the Plaintiff from the partner EDN
and began new specific rules just for the Plaintiff and the partner EDN.

30.

Later that day on or about September 18, 2018, Defendant Steve
Driscoll returned to his threats and discrimination by adding his supervisor,
Defendant Steve Menard to an email chain with his demands directedly only
for the Plaintiff and the African American partner, EDN.

31.

Defendant Steve Driscoll's demands were not placed on the rest of his
organization or the Plaintiff's peers.

32.

The Plaintiff specifically asked Defendant Steve Driscoll if his
demands were also meant for every partner in the organization and the
Plaintiff's peers.  Defendant Steve Driscoll's answer was "no".

33.

On or about September 21, 2018, Defendants Steve Driscoll and Steve Menard began discussing having to pay the commission to the partner, EDN and the Plaintiff.  There were no other discussions of payment of commission for any other partner or any of the Plaintiff's peers.

34.

To this date, the partner EDN has not received full payment of the commissions they earned and the Plaintiff has had difficulty receiving full payment his commissions.

35.

The partner EDN was soon terminated from the solution provider/partner program.

36.

The Plaintiff's sales plan was not adjusted by the Defendants when the Plaintiff's number one partner in sales, EDN, was terminated and taken away from him.  The Plaintiff was expected to make his sales plan for the year with less partners than his peers.

37.

Defendant Steve Driscoll failed to assign the Plaintiff any accounts from August 2018 to May 2019.  This directly affected the Plaintiff's compensation and bonuses.

38.

On or about the fourth quarter of 2018, Defendant Steve Driscoll placed the Plaintiff on a Performance Improvement Plan (PIP).  The Plaintiff was placed on the PIP based on the falsehood that the Plaintiff did not and would not complete his mandatory training due by December 31, 2018 and reach his sales quota goal of 70% and above.

39.

Defendant Steve Driscoll had Defendant Steve Menards's approval and the HR lead to initiate the PIP involving the Plaintiff.

40.

The Plaintiff finished 2018 during the Coaching Action Plan (CAP) and PIP discrimination by making 98% of his sales quota plan and 100% completion of his compliance training.

41.

Four of seven of the Plaintiff's Caucasian peers ended 2018 under 60% to sales plan for the year.  None of them were placed on a CAP or PIP or even had their performance addressed.

42.

The Plaintiff documented every step of the PIP weekly with his notes and responses in red.  The Plaintiff sent Defendants Steve Driscoll and Steve Menard an email of the document weekly.

43.

After enduring months of discrimination and retaliation from Defendant Steve Driscoll, Human Resources determined that the CAP and PIP should have never been allowed to be initiated.

44.

Human Resources dissolved the CAP and PIP.  It was recognized that the Plaintiff met all the requirements of his job and duties.

45.

Human Resource told the Plaintiff not to worry about the PIP.  The PIP was never closed, rectified or explained.

46.

During the second half of  August 2018, Defendant Steve Driscoll became very upset with the Plaintiff and began threatening the Plaintiff by trying to use company policies to fire the Plaintiff.

47.

This came after the Plaintiff began expressing his concern about treating all partners equally and operating fairly.  Defendant Steve Driscoll's response was that "he would do what he wanted, and this was his organization and company to run".

48.

The Plaintiff expressed to Defendant Steve Driscoll that he had no intention of personally violating any code of business conduct rules or showing any bias toward any partner in the company program.

49.

For three weeks, the Plaintiff expressed his concerns regarding Defendant Steve Driscoll's discriminatory and harassing behavior with Defendant Steve Menard.  The Plaintiff did not receive a response from Defendant Steve Menard.

50.

On or about October 9, 2018, the Plaintiff requested a formal meeting with Defendant Steve Menard (Defendant Steve Driscoll's supervisor).

51.

On or about October 15, 2018, the Plaintiff had a call with Defendant Steve Driscoll and Defendant Steve Menard.  The Plaintiff shared his complaints with Defendant Steve Menard about Defendant Steve Driscoll's discriminatory and harassing behavior.

52.

Defendant Steve Menards' response to the October 15, 2018 call was that "he didn't like confrontation and to just do what Steve wanted and get this over and move on, because he didn't like conflict".

53.

Defendants Steve Driscoll and Steve Menard proceeded with the CAP after the Plaintiff provided over forty emails to Defendant Steve Menard on behavior and actions of Defendant Steve Driscoll.

54.

The Plaintiff repeatedly asked for assistance addressing Defendant Steve Driscoll's discrimination through proper channels.  This included asking for assistance from both of the Plaintiff's Assistant Vice Presidents

(Defendants Steve Menard and Doug Clark), the Plaintiff's Vice President

(Defendant Stacey Swartz), the company complaint hotline, emails, and

phone calls and discussions with multiple people in Human Resources.

55.

On or about November 2018, the Plaintiff contacted Human

Resources regarding his concerns and outlined what was happening.

56.

On or about December 5, 2018, Linda Guadiano, in Human Resource

was sending the Plaintiff in a loop.  She sent the Plaintiff back to Defendants

Steve Driscoll and Steve Menard and disregarded all complaints.

57.

On or about December 6, 2018, the Plaintiff filed the first of two

internal complaints with the AT&T hotline.

58.

The Plaintiff's first complaint with the AT&T hotline was for

discrimination.

59.

Defendant Steve Driscoll continued his discrimination and harassment

by escalating it both on the Plaintiff and the African American partner,

EDN.  Defendant Steve Driscoll's attacks ensued through February 2019,

with several emails and conversations with Human Resources on the issue of discrimination.

60.

Defendant Steve Driscoll took it upon himself to remove all the Plaintiff's accounts from the company's salesforce and reassign them to him.

61.

Defendant Steve Driscoll denied the Plaintiff's travel requests as well hindering the Plaintiff from traveling to see his clients.

62.

On or about January 2019, the Plaintiff contacted Human Resources again and explained the discriminatory and harassing behavior he was enduring from the Defendant Steve Driscoll.

63.

Defendant Steve Driscoll contacted the partner, EDN, and yelled at them and made demands forcing them to send an email to the entire FirstNet leadership on their actions.

64.

Due to the Defendant Steve Driscolls' actions, the Defendant was removed from ever being able to speak to the partner, EDN, again.

65.

Defendant Doug Clark contacted the Plaintiff and reinstated his travel privileges and contacted operations to have the Plaintiff's accounts restored to him.

66.

Defendant Steve Driscoll deliberately ignored the company policy and procedure for doing annual reviews.

67.

Defendant Steve Driscoll proceeded to write negative and false claims on the Plaintiff's 2018 annual review and marked the Plaintiff as not applicable for a raise.

68.

In 2018, everyone on Defenandant Steve Driscolls' team received their annual review, had a one on one with the Defenadant Steve Driscoll and received a raise except for the Plaintiff despite being under 70% of their sales plan quota.

69.

Defendant Steve Driscoll the proceeded to hide the Plaintiff's annual review from the Plaintiff and did not forward the review with his comments to the Plaintiff.

70.

Defendant Steve Driscoll setup one on one annual reviews with everyone on his team (per company policy) except the Plaintiff.

71.

Defendant Steve Driscoll received several reminders from the automated system within the company, letting him know that he needed to forward the Plaintiff his annual review for the Plaintiff's signature.

72.

Defendant Steve Driscoll continually ignored those reminders and just forwarded the Plaintiff's annual review with his negative comments to Defendant Doug Clark.

73.

Defendant Doug Clark continued this process of not sending the Plaintiff his annual review.

74.

Defendant Doug Clark also ignored the same reminders for he received and eventually closed the Plaintiff's annual review without the Plaintiff ever knowing it.

75.

The annual review process is the same for every employee at AT&T.

The process has very strict processes and procedures.

76.

None of the annual review processes were followed and several were

purposely broken regarding the Plaintiff's annual review.

77.

Plaintiff filed a second complaint for retaliation on or about the end of

July 2019.

## VI. CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

Race Based Discrimination in Violation of Title VII of Civil Rights Act of

1964, as amended.

78.

Plaintiff incorporates by reference as if fully set forth herein the

allegations contained in paragraphs 1 through 77, above.

79.

Defendant Steve Driscoll subjected the Plaintiff to different terms and

conditions that other non-African American employees did not have to

endure.

80.

Defendant Steve Driscoll purposefully failed to assign the Plaintiff accounts from August 2018 to May 2019 which directly affected the Plaintiff's compensation and bonuses.

81.

As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

82.

Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on race.

83.

Plaintiff is entitled to his reasonable attorney's fees and costs of suit.

**SECOND CLAIM FOR RELIEF**

Race Based Discrimination (Harassment/Hostile Work Environment) in

Violation of Title VII of the Civil Rights Act of 1964, as amended.

84.

Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraph 1 through 83, above.

85.

Plaintiff was subjected to harassment by Defendants because of his race.

86.

Plaintiff was harassed by Defendant Steve Driscoll who removed his account and placed barriers on his travel requests to see clients therefore hindering his ability to perform his job.

87.

Defendant Steve Driscoll placed the Plaintiff on an unjustifiable PIP also preventing him from doing his job and resulting in the loss of his raise.

88.

Defendants' conduct was not welcomed by the Plaintiff.

89.

Defendants' conduct was undertaken because of Plaintiff's race.

90.

Defendants' conduct was so severe and pervasive that reasonable persons in the Plaintiff's position would find their work environment to hostile and abusive.

91.

Plaintiff believed his work environment to hostile or abusive as a result of Defendants' conduct.

92.

Management level employees knew, or should have known, of the abusive conduct.  Plaintiff provided management level personnel, including Defendant Steve Menard, Defendant Doug Clark and Defendant Stacey Swartz with information sufficient to raise a probability of race based harassment in the mind of a reasonable employer.  Moreover, the harassment was so pervasive and open that a reasonable employer would have had to been aware of it.  Management level employees were themselves complicit in the abusive conduct.

93.

Defendants did not exercise reasonable care to prevent harassment in the workplace on the bases of race and did not exercise reasonable care to promptly correct any harassing behavior that did occur.

94.

As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

95.

Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard for Plaintiff's right to be free from discrimination based on race.

### THIRD CLAIM FOR RELIEF

Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as amended

96.

Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraph 1 through 95, above.

97.

Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from discriminating against an employee "because [he] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. §n2000e-3(a).

98.

Plaintiff made informal and formal complaints to Defendants and Human Resource employees opposing Defendants' unlawful, discriminatory employment practices based on race.

99.

As a result of Plaintiff's complaints, Defendants and employees took materially adverse actions against the Plaintiff, including but not limited to, removing the Plaintiff's accounts, preventing the Plaintiff from traveling to see clients, attempting to close out the Plaintiff's 2018 review directly affecting his compensation and bonuses, placing the Plaintiff on unjustifiable CAP and PIP write ups, threats of termination and reprimands by supervisors.

100.

Defendants' adverse actions constituted retaliatory workplace harassment.

101.

Defendants' retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity under Title VII.

102.

As a direct, legal and proximate result of Defendants' retaliation, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

103.

Plaintiff is entitled to his reasonable attorney's fees and costs of suit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.      For  a declaration that Defendants' actions, policies and practices as alleged herein are unlawful;

2.      For lost wages and all other compensation denied or lost to Plaintiff by reason of Defendants' unlawful actions, in an amount to be proven at trial;

3.      For compensatory damages for Plaintiff's emotional pain and suffering, in an amount to be proven at trial;

4.      For punitive damages in an amount to be determined at trial;

5.      For liquidated damages;

6.      For interest on lost wages, compensation, and damages, including pre and post-judgment interest and an upward adjustment for inflation;

7.      For an order enjoining Defendants from engaging in the unlawful acts complained of herein;

8.      For reasonable attorney's fees and costs of suit pursuant to 2 U.S.C. § 2000e-5(k); and

9.      For such other and further relief as this Court deems just and proper.

This the 16TH day of August, 2021.

/s/ Theresa Seals Starkes
Theresa Seals Starkes
Attorney for Defendant
GA Bar #676502

The Seals Starkes Law Firm, LLC
3939 LaVista Road, Suite E #411
Tucker, Georgia  30084
Office: (678) 404-9415

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all causes of action and claims to

which he has a right to a jury trial.

This 16th day of August, 2021.

Respectfully submitted,

/s/ Theresa Seals Starkes
Theresa Seals-Starkes
Attorney for Plaintiff
Georgia Bar No. 676502

3939 Lavista Road, Suite E #411
Tucker, GA 30084
(678) 404-9415  Office

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served on counsel for the defendant in the foregoing matter with a true and correct copy of the foregoing by U.S. Mail delivery and electronic mail delivery, to the following address:


AT&T Mobility Services
1025 Lenox Blvd.
Atlanta, GA


This 16th day of August, 2021.


Respectfully submitted,


<u>/s/ Theresa Seals Starkes</u>
Theresa Seals-Starkes
Attorney for Plaintiff
Georgia Bar No. 676502

3939 Lavista Road, Suite E #411
Tucker, GA 30084
(678) 404-9415  Office